# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AMY McBRIDE, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. RDB-18-171 |
| WARDEN, *et al.*, | * | |
| Defendants | * | |
| | *** | |

## MEMORANDUM OPINION

In response to this civil rights complaint, Defendants the Warden, Governor Larry Hogan, and Secretary Stephen T. Moyer move to dismiss or for summary judgment in their favor. ECF 34. Self-represented Plaintiff Amy McBride, despite being notified of her opportunity to respond to the motion, (ECF 35) has failed to respond. No hearing is necessary for the disposition of the matters pending before the Court. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Defendants' motion, construed as one for summary judgment, is GRANTED.

## I. BACKGROUND

### A. Plaintiff's Allegations

McBride is an inmate at the Maryland Correctional Institution for Women (MCIW). She filed the instant complaint presenting a laundry list of grievances about her incarceration. Primarily, Plaintiff alleges that she was: denied adequate medical care (ECF 1 at pp. 3-4), denied legal resources (*id.* at p. 5), suffered issues with her legal mail (*id.* at p. 6) and the administrative remedy process (*id.*, p. 4), and was housed in a gender discriminatory, filthy, vermin-infested infirmary (*id.* at p. 6).

Plaintiff alleges that she had "issues with the chronic care medical doctor" regarding her request to have a skin biopsy performed. The request was denied and four years later she was diagnosed with skin cancer. ECF 1, p. 1. She alleges she was left with a scar and needs a biopsy for a growth in her nose. *Id.*, p. 2.

Plaintiff states that in 2015 she began to suffer from incontinence issues which have adversely affected the quality of her life. ECF 1, p. 2. She explains that she was referred to a gastroenterologist and later a gynecologist in order to ascertain the cause of her condition. *Id.*, p. 3. She indicates that the incontinence led to vaginal infections for which she received several rounds of antibiotics. *Id.* Ultimately she was referred for consultation with a surgeon. *Id.*

Plaintiff states that she has several allergies including sulfur and preservatives in food. ECF 1, p. 3. She was provided a rescue inhaler but she claims that when she used the inhaler her "nose would begin to swell closed." *Id.*, p. 4. In 2013 she reports she needed to use an epipen due to a reaction to food she ate. She claims that she did not receive any assistance from the chronic care doctor after 2015 and that the dietary department "served her allergies." *Id.*, p. 4. She also generally claims that she has not received dental care. ECF 1, p. 5.

On December 17, 2016, Plaintiff claims she began a hunger strike due to her complaints about her medical treatment, access to grievances, legal materials, and legal mail.. ECF 1, p. 6. In January of 2017 she was placed in the infirmary. *Id.* She was later removed from the infirmary despite her continuation of the hunger strike. *Id.*, p. 7. She was subsequently returned to the infirmary and provided intravenous fluids. *Id.*, p. 8.

She also states that she unsuccessfully attempted to use the administrative remedy process. ECF 1, p. 4.

2

Plaintiff states that access to adequate and effective legal resources does not exist. ECF 1, p. 5. Additionally she states that, "The State is out of the U.S. Federal standards for what constitutes legal mail." ECF 1, p. 5.

Plaintiff alleges that the conditions in the infirmary are gender discriminatory, filthy, and vermin are present. ECF 1, p. 7. She also claims that the building loses heat. *Id.*

B. Defendants' Response

Defendants submit exhibits, including the affidavits of Ami Jalloh, R.N., MCIW Warden Margaret Chippendale, and MCIW Librarian Hananya Cohen, and relevant portions of McBride's medical records from June 23, 2015 to January 25, 2018. ECF 34-2 (Jalloh Affidavit); ECF 37-3 (medical records 6/23/15-1/25/18); ECF 34-4 (Chippendale Affidavit); ECF 34-5 (Cohen Affidavit).

1. Medical Care

Plaintiff's initial Complaint included allegations that she was on a hunger strike. In light of the concern for her safety, the Court directed the Office of the Attorney General to show cause why injunctive relief should not be granted. ECF 3. The Office of the Attorney General responded and attached affidavits and medical records (ECF 6) which demonstrated that at that time Plaintiff was housed in the infirmary at MCI where she was receiving constant medical care and was regularly treated by physicians, mid-level providers, and nursing staff. ECF 6-1, ¶ 3. Despite proclaiming that she was on a hunger strike, Plaintiff was observed picking and choosing foods that she wanted to eat and was not refusing all foods. *Id.*

Thereafter, Plaintiff filed additional documents including two Motions for Injunctive Relief again alleging she was on a hunger strike and was weak. ECF 7, 8, 9, 10-13, 15. The Office of the Attorney General was directed to supplement their Response concerning Plaintiff's medical

care. ECF 16. The response (ECF 17) demonstrated that while Plaintiff was regularly seen by medical staff and that while Plaintiff regularly complained of allergies and offered this as the basis for her declining food, allergy testing was negative. ECF 17-1 at pp. 3-5. Additionally, it was reported that Plaintiff regularly ate and had stopped refusing meals. *Id.* Her requests for preliminary injunction were denied. ECF 18.

Ami Jalloh, R.N., B.S.N. is the Health Services Administrator for Wexford Health Sources, Inc. ECF 34-2, ¶ 2. She avers that Plaintiff is housed in the medical infirmary where she receives regular treatment and evaluation by physicians, mid-level providers and nursing staff. ECF 34-2, ¶3. Although Plaintiff has claimed to be on a hunger strikes she has been observed picking and choosing foods that she wants to eat and is not refusing all meals. *Id.*

2. Legal Mail

Mailroom staff are responsible for handling legal mail which is delivered to the inmates by custody staff on the 3-11 shift. ECF 34-4, ¶ 2. The MCIW Legal Mail Logbook demonstrates that Plaintiff received legal mail on October 2, 10, 13, 2017, December 26, 2017 and January 12 and 26, 2018. *Id.*

3. Administrative Remedy Procedures

Forms for filing an Administrative Remedy Procedure (ARPs) are available to inmates at the Correctional Officer's post in the Infirmary Office. ECF 34-4, ¶ 3.

4. Access to Legal Materials

Librarian Hananya Cohen explains that the Inmate Library at MCIW is a general use library with a legal reference section that provides various materials and services to inmates. ECF 34-5, ¶ 4. Lexis-Nexis is provided at the library and is updated quarterly. *Id.* The Annotated Code of Maryland is available by computer access and by hard copy volumes which are updated yearly. *Id.*

4

Questions about parts of the Code or small sections of the code can be requested by inmates in confined units. *Id.* Additionally, Cohen explains that Legal Assistance to State Institutions (LASI) which is administered by Maryland Correctional Enterprises provides inmates the opportunity to receive weekly up to five requested cases or other materials. Cohen is responsible for facilitating and tracking the inmates' LASI requests. *Id.,* ¶ 3. Lastly, inmates confined in the general population are permitted weekly access to the library while inmates housed in the infirmary are provided library services through Cohen. *Id.,* ¶ 4.

Plaintiff regularly submits one or two requests to the library each week with several questions in each request. ECF 34-5, ¶ 5. Cohen endeavors to answer each of Plaintiff's questions. *Id.* Cohen visits the infirmary twice a week to deliver legal information requests and non-reference books to Plaintiff. *Id.,* ¶ 6. Cohen further states that she is available on request to all inmates in the infirmary. *Id.* Lastly, she notes that Plaintiff regularly uses the LASI service and her requests are delivered to her. *Id.,* ¶7.

5. Conditions

Jalloh avers that to her knowledge there have been no reports of rats or mice in the MCIW medical infirmary and that the infirmary is hygienic and clean. ECF 34-2, ¶ 4.

## II. NON-DISPOSITIVE MOTIONS

Plaintiff has filed a Motion for Reconsideration of the Order denying her request for appointment of counsel. ECF 25. As Plaintiff has previously been advised, a federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1),[1] is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds,*

---

[1] Under § 1915(e)(1), a Court of the United States may request an attorney to represent any person unable to afford counsel.

518 F.2d 779 (4th Cir. 1975); *see also, Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel).

Upon careful consideration of the motions and previous filings by Plaintiff, the Court finds that she has demonstrated the wherewithal to either articulate the legal and factual basis of her claims herself or secure meaningful assistance in doing so. Contrary to Plaintiff's assertions, the issues pending before the Court are not unduly complicated. Therefore, at this time there are no exceptional circumstances that would warrant the appointment of an attorney to represent Plaintiff under §1915(e)(1). As such, her Motion for Reconsideration (ECF 25) is denied.

Plaintiff also filed a Motion for Emergency Injunctive Relief. ECF 30. In the Motion Plaintiff raises concerns about her adjustment hearing held on November 7, 2018 (*id.*, p. 1) as well as her continued complaints regarding her medical care which she presents in a diary format. *Id.*, pp. 1-5. Additionally, plaintiff indicates that she was moved to segregation and her personal property confiscated. *Id.*, pp. 6. She seeks an order that her property be returned to her. Attached to the motion is a property inventory which indicates that as a disciplinary segregation inmate Plaintiff is entitled to access her legal materials. ECF 30-1.

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Natural Res.*

*Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Di Biase v. SPX Corp.*, 872 F.3d 224, 229-30 (4th Cir. 2017).

As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*)).

Plaintiff fails to establish that she is likely to suffer irreparable harm absent preliminary injunctive relief. At a minimum, she does not demonstrate she is facing imminent or irreparable harm. The bald allegations contained in Plaintiff's Motion do not show that an injunction is in the public interest. Daily maintenance of security and order in a correctional institution are "considerations . . . peculiarly within the province and professional expertise of corrections officials." *Bell v. Wolfish*, 441 U.S. 520, 540 n.23 (1979). Lastly, as Plaintiff has a forum for her Complaints the equities do not tip in his favor. Simply stated, Plaintiff has not sustained her burden of demonstrating that her requested injunctive relief is warranted.

### III. DISPOSITIVE MOTION STANDARD OF REVIEW

Defendants have filed a Motion to Dismiss, or, in the Alternative, for Summary Judgment. Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y*

*of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). To the extent that grounds for dismissal are based solely on the contents of the Complaint, the Court may dismiss under Rule 12(b)(6) if the complaint does not allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pled allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Rule 12(d) requires courts to treat a Rule 12(b)(6) motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some indication that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). Here, the notice requirement has been satisfied by the title of the Motions. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d), or otherwise put the

district court on notice of the reasons why summary judgment is premature. *See Harrods, Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). Here, Plaintiff has not filed a Rule 56(d) affidavit or otherwise requested discovery in this matter. Under these circumstances, the Court will construe Defendants' Motion as a Motion for Summary Judgment.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

Because she is proceeding pro se, Plaintiff's submissions are liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, this Court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted).

## IV. ANALYSIS

A. <u>Respondeat Superior</u>

Plaintiff has pointed to no action or inaction on the part of any of the named Defendants that caused her constitutional injury. Other than naming the Warden of MCIW, Governor Hogan, and Secretary Moyer in the caption of her Compliant, Plaintiff failed to specify any actions undertaken by any of the named Defendants. "Although § 1983 must be read against the background of tort liability that makes a man responsible for the natural consequences of his actions, liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (citation, alteration, and internal quotation marks omitted). Allegations of personal involvement are necessary in order for a case to proceed. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir.1985) ("In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." (internal punctuation omitted)); *Swint v. City of Wadley*, 51 F.3d 988, 999 (11th Cir. 1995) (explaining that 42 U.S.C. § 1983 "require[s] proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation").

To the extent Plaintiff intended to hold the named Defendants liable based on their supervisor positions, it is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Thus the named Defendants' status does not subject them to liability. Under § 1983, any liability imputed to supervisory officials must be supported by evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to

individuals like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994) (citations omitted). Plaintiff fails to establish that any of the named Defendants in any way restricted or interfered with the medical care provided.

Plaintiff has failed to set forth sufficient factual allegations to state a cognizable claim of supervisory liability as to the named Defendants. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) ("holding federal pleading standards require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); *Iqbal*, 556 U.S. at 678 (2009) (holding that although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Instead, Plaintiff's claim is full of legal conclusions unsupported by specific factual allegations.

Even if Plaintiff had specifically named the parties, for the reasons that follow her claims as stated would nevertheless fail.

B. Medical Claims

At its core, Plaintiff's claims regarding receipt of medical care are that Defendants violated the Eighth Amendment prohibition against cruel and unusual punishment due to their deliberate indifference to her serious medical conditions. Deliberate indifference to a serious medical need requires proof that, objectively, a prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*,

825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

The subjective component requires "subjective recklessness" in the face of the serious medical conditions. *See Farmer*, 511 U.S. at 839-40; *see also Anderson v. Kingsley*, 877 F.3d 539, 544 (4th Cir. 2017). Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference because 'prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841

F.3d at 226 (quoting *Farmer*, 511 U.S. at 842). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *see also Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) ("[A] prison official's response to a known threat to inmate safety must be reasonable.").

Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)); *see also Jackson*, 775 F.3d at 179 (physician's act of prescribing treatment raises fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive risk). While "a prisoner does not enjoy a constitutional right to the treatment of his or her choice, the treatment a prison facility does provide must nevertheless be adequate to address the prisoner's serious medical need." *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013).

The record evidence demonstrates that Plaintiff is housed in the infirmary at MCIW and receives regular medical care by physicians, mid-level providers, and nurses. She has been regularly referred for routine and specialized medical screening including: mammography, an MRI of her lumbar spine, an upper GI series, a CT of her head, x-rays of her abdomen, knees, skull, and spine, an EKG, an esophagogastroduodenoscopy and fiberoptic colonoscopy, and a barium study. ECF 34-3, p. 20. She has also been provided routine and specialized blood work as well as stool cultures. *Id.* She was referred to on and off-site medical specialists including a surgeon, oncologist, dermatologist, oncology radiologist, and plastic surgeon. *Id.*, p. 80. She has been treated for skin lesions, including a basal cell carcinoma which was successfully excised. *Id.*, pp. 77, 81-83. She received daily medical monitoring each time she declared she was on a hunger

13

strike. *Id.*, pp. 3-12- 14-18, 21-56, 58-66, 68, 70. Additionally, she has regularly been provided analgesic pain medication as well as antibiotics, antifungals, allergy medication, and medication to treat reflux and high cholesterol. (*Id.*, pp. 51, 74, 76, 80.) Her claims that she suffers from food allergies were not substantiated by allergy testing. ECF 34-3.

The record evidence demonstrates that Plaintiff has received regular medical care from her medical providers who ordered an array of diagnostic testing to address Plaintiff's stated medical concerns. Medical providers also regularly reevaluated Plaintiff's treatment plan and prescribed a variety of medications in an effort to treat her. Simply stated, the undisputed record establishes that Plaintiff received adequate treatment for the medical complaints she presented to medical staff. To the extent she believed she was entitled to more than the treatment provided, her claim represents a mere disagreement with the treatment provided to her. Further, the complaint fails to establish that Plaintiff suffered a cognizable injury due to the failure to provide her with the treatment of her choice. Defendants are entitled to summary judgment.

C. Access to Courts

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). However,

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

The Prison Litigation Reform Act ["PLRA"] requires a prisoner to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action

14

shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Thus, the exhaustion provision plainly extends to the allegations raised by Plaintiff and, upon proof that she has failed to exhaust a claim, Defendants are entitled to dismissal of the unexhausted claims. *See Anderson v. XYZ Correctional Health Serv's., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005) (PLRA exhaustion not a basis for *sua sponte* dismissal, but upon proof of affirmative defense raised by defendants non-exhaustion requires dismissal). Plaintiff's claim that she is denied access to forms used to file an administrative remedy procedure request (ARP) is a claim that she is denied access to courts. The tools required by *Bounds v. Smith*, 430 U.S. 817, 821 (1977) "are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996). Impairment of other capacities to litigate are consequential to incarceration and are constitutional. *Id.*

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show "actual injury" to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355). "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned

15

to the political branches." *Lewis*, 518 U.S. at 349. Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id.* at 399. Plaintiff must prove that she suffered an actual injury by showing that the defendant's acts hindered her ability to pursue a nonfrivolous legal claim. Conclusory allegations are not sufficient in this regard. *See Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) (denying access to court claim based on allegation that petition for a writ of certiorari had, for unspecified reasons, been dismissed and where plaintiff did not even mention the point on appeal). Plaintiff must establish that her underlying claim was "nonfrivolous" or "arguable." *Christopher v. Harbury*, 536 U.S. at 415. "[T]he predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* at 416 (footnote omitted). A prisoner's right to access the courts does not include the right to present frivolous claims. *Lewis*, 518 U.S. at 353 n.3. It is not enough that a prisoner is prevented from challenging her conviction. She must also show that her claim had merit.

Plaintiff offers vague and conclusory allegations regarding the perceived deficits of the legal library at MCIW. She has failed to allege -- much less demonstrate -- that she suffered any injury to her ability to access the Courts as a result of the legal materials provided at MCIW. Similarly, Plaintiff has failed to establish any injury arising from the alleged deficiencies in the MCIW administrative grievance process. As such, these claims fail.

3. <u>Legal Mail</u>

Prisoners have a constitutionally protected right to send and receive mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Moorehead v. Keller*, 845 F. Supp. 2d 689, 692 (W.D.N.C. 2012). While the interference by prison officials with certain types of mail may state a

16

constitutional claim, occasional incidents of delay or non-delivery of mail do not rise to a constitutional level. *Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997); *Smith v. Mashner*, 899 F.2d 940, 944 (10th Cir. 1990). The evidence before the Court demonstrates that Plaintiff regularly received legal mail. Her bare claim that unspecified policies do not comport with federal standards is insufficient to state a claim. *Iqbal*, 556 U.S. at 678 (2009) (holding that although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations").

4. Conditions

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that "the deprivation of [a] basic human need was objectively sufficiently serious," and that "subjectively the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis and citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U.S. at 298-99. In other words, "the test is whether the guards know the plaintiff inmate faces a serious

danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly-established pre-existing law. *See Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

The objective prong of a conditions claim requires proof of an injury. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of "a serious or significant physical or emotional injury resulting from the challenged conditions." *See Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003) (quoting *De'Lonta*, 330 F.3d at 770).

Defendants deny that the infirmary was dirty as Plaintiff alleges. Plaintiff has offered nothing to refute Defendants' evidence that the infirmary was not vermin infested or unhygienic. Additionally, Plaintiff has failed to allege or demonstrate that she was injured in any way by the conditions she claims she was housed in. As such, the claim fails.

## CONCLUSION

Having found no factual basis for Plaintiff's claims, Defendants' dispositive Motion, construed as a Motion for Summary Judgment, will be GRANTED and judgment will be ENTERED in favor of Defendants and against Plaintiff. Plaintiff's Motions for Reconsideration

of Order Denying her Motion to Appoint Counsel (ECF 25) and for Immediate Injunctive Relief (ECF 30) ARE DENIED.

July 11, 2019
Date

/s/ Richard D. Bennett
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE